U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
AUG 31 2011
CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| MARY SEAWOOD, § | |
| PLAINTIFF, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:10-CV-962-A |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
| DEFENDANT. § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Mary Seawood ("Seawood") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security. Seawood disagrees with the Commissioner's determination that she is liable for an overpayment of disability benefits awarded to her under Title II of the Social Security Act.

On June 18, 1993, Seawood applied for disability insurance benefits. Seawood was found disabled and entitled to a period of disability and appropriate disability insurance benefits beginning

1

in May 1992. (Transcript ("Tr.") 16.) In 2001, the Social Security Administration ("SSA") ultimately determined that Seawood had accrued an overpayment of benefits in the amount of $21,264.50 due to her receipt of workers' compensation benefits in addition to Title II disability benefits from May 1992 through July 2001. (Tr. 16.) Seawood filed various applications contesting such decision, which were denied. (Tr. 16, 89-92.) An Administrative Law Judge ("ALJ") held a hearing on December 12, 2007 and issued a decision on March 13, 2008 that, although Seawood was not at fault in causing or accepting the overpayment of $21,264.50, recovery of the overpayment was not waived and Seawood should repay the overpayment at a rate not to exceed $200.00 per month. (Tr. 16-19; *see* Tr. 20-37.) Seawood appealed the ALJ's decision to the Appeals Council, requesting that the Appeals Council review the overpayment and change the withholding rate to $100.00 per month. (Tr. 148-49.) The Appeals Council agreed to review the ALJ's decision, finding the following: (1) the SSA overpaid Seawood $21,264.50 in disability insurance benefits for the period from May 1992 through July 2001; (2) Seawood was "not without fault" in causing or accepting the overpayment; and (3) recovery of the overpayment cannot be waived.[1] (Tr. 4-9.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions govern disability insurance benefits. *See* 20 C.F.R. Pt. 404. As with all social security cases, judicial review of the Commissioner's decision regarding an overpayment is limited to

---

[1] The Court notes that in one section of the Appeals Council's decision, it states that the "claimant was without fault in causing and/or accepting the overpayment." (Tr. 9.) This statement, however, appears to be an error by the fact that in several other places in the Appeals Council's decision it clearly states that Seawood was "not without fault" in causing or accepting the overpayment and it is clear from a reading of the entire decision that the Appeals Council found Seawood was "not without fault." (*See* Tr. 4-9.)

determining whether the decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied to evaluate the evidence. *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

## III. ISSUE[2]

Seawood raises the following issue:

> Whether the Appeals Council's decision that Seawood was "not without fault" in causing or accepting the overpayment is supported by substantial evidence.

## IV. ADMINISTRATIVE RECORD

In June 1993, Seawood filed an application for a period of disability and disability insurance benefits, alleging that her disability began in December 1988. (Tr. 144-147.) In the application, Seawood stated that she was "receiving or expect[ed] to receive workers' compensation, public disability or black lung benefits." (Tr. 144.) The application, which was signed by Seawood also

---

[2] In her *pro se* brief, Seawood states that there are two issues. (Pl.'s Br. at 1.) The Court will not address the first issue because it is difficult to understand and appears to be subsumed within the second issue.

contained the following statements: "I agree to report entitlement to and/or changes in the amount of workers' compensation or other public disability benefit. I understand that such benefit may affect my social security payments or result in an overpayment which I may have to pay back." (Tr. 146.) Seawood was found to be disabled and began receiving benefits beginning in May 1992. (Tr. 16.)

According to a Report of Contact dated February 25, 2001, the SSA apparently began contacting the Department of Labor in February 2001 to try to gain information regarding Seawood's workers' compensation benefits. (Tr. 152, 156-57, 160-61.) After having no success in obtaining the information, the SSA, on May 29, 2001, sent Seawood a letter requesting information regarding her workers' compensation benefits. (Tr. 152, 154-155, 158-59.) On July 11, 2001, the SSA received a reply from Seawood "showing gross comp. of $2244.00 monthly--04/22/01-05/19/01." (*Id.*; *see* Tr. 151, 153-55.)

In a letter dated August 27, 2001, the SSA notified Seawood that she had been overpaid $26,778.00 in disability benefits since May 1, 1992 due to her receipt of workers' compensation benefits throughout the same time period.[3] (Tr. 84-88, 191-200.) On September 28, 2001, Seawood filed a request for reconsideration, claiming that the amount of the overpayment was "outrageously wrong" and that the overpayment was not her fault. (Tr. 89-90.) There is no evidence the SSA immediately responded to her request for reconsideration. (Tr. 8.) Thereafter, the SSA, in a letter dated May 12, 2004, sent Seawood a letter indicating that her total amount of overpayment was $25,525.00 and set forth the amounts of her future social security disability benefit payments. (Tr. 187-88.) On May 13, 2004, Seawood filed another request for reconsideration. (Tr. 91-92.) In the

---

[3] Apparently, on July 17, 2001, the SSA received proof of the amounts that Seawood was receiving in workers' compensation payments from the Department of Labor. (Tr. 17.)

4

request, Seawood stated, "I turned in my income between March--July 2003. And I just received a statement that from beginning Jan--Mar 04 I would receive an increase in income. I only got my first check April 04." (Tr. 91.)

In an undated Recovery Interview Supplement, Seawood reported to the SSA that she had reported the receipt of her workers' compensation benefits to the SSA by coming in to the SSA office.[4] (Tr. 38-39.) In a letter dated September 17, 2005, the SSA, affirming its prior determination that Seawood had been overpaid $26,561.50, stated:

> You were notified on August 27, 2001, that the Social Security benefits for you and your family must be reduced because of the federal Workers' Compensation payments you were receiving. On September 28, 2001, you requested reconsideration of the amount of the overpayment and stated that it was not your fault. You did not know anything was wrong.
>
> . . . .
>
> We received verification from the United States Department of labor that you had been receiving payments since 1992. When you started receiving Social Security effective May 1992, your Social Security benefits should have been reduced because you were already receiving Federal Compensation payments. Since you received both payments until September 2001, you had been overpaid $26,561.50 and your son had been overpaid $5[,]064.00. Thereby making the total overpayment $31,625.50.

(Tr. 93-94.)

In April 2006, July 2006 and November 2006, the SSA sent Seawood various letters informing her of the amounts of her future social security benefits based on withholdings to recover the overpayments that had been made. (Tr. 96-101, 110-11, 123-24, 180-81.) On May 24, 2006, Seawood filed a "Request for Waiver of Overpayment Recovery or Change in Repayment Rate"

---

[4]Seawood contests several of the answers filled in by an SSA employee in the Recovery Interview Supplement. (Tr. 201-03).

5

("Request") (Tr. 102-09; *see* Tr. 204-21.) In the Request, Seawood claimed that the overpayment was not her fault, she could not afford to repay the money, and she had reported her workers' compensation to the SSA by phone and in person. (*Id.*) Based on information provided by Seawood in the request, the SSA found that Seawood's monthly income exceeded her adjusted monthly expenses by $570.00. (Tr. 108.) In a Report of Contact dated July 6, 2006, the SSA determined that Seawood's request for waiver of the overpayment could not be approved because Seawood "has in excess of $500.00 per month left in income after paying her bills" and, thus, was in a financial position to repay the overpayment. (Tr. 112.) Seawood claims that this information is incorrect and that the person at the SSA that helped her fill out her income and expenses form wrote down incorrect information. (Tr. 204-06; *see* Tr. 102-09, 207-21.)

In a letter dated July 26, 2006, the SSA notified Seawood that she owed $21,264.50[5] and that her request to have the overpayment waived was denied. (Tr. 115-16; *see* Tr. 110-14.) In a Waiver Determination dated August 16, 2006, the SSA found that Seawood was at fault for the overpayment because proof of workers' compensation benefits was not received until July 2001 and Seawood was not entitled to a waiver of the overpayment. (Tr. 113-14.) In a letter also dated August 16, 2006, the SSA notified Seawood that she was not without fault of the overpayment because the SSA "did not receive workers comp proof until 07/17/2001, which is when we received proof of the worker's comp from the department of labor." (Tr. 117 (emphasis omitted); *see* Tr. 17-18.)

Thereafter, on October 2, 2006, Seawood filed a request for a hearing before an ALJ. (Tr. 119-20). In a Waiver Determination dated October 4, 2006, the SSA found that recovery of the

---

[5]The amount of the overpayment was evidently reduced because there were periods when the SSA withheld Seawood's social security disability benefits in an attempt to correct the overpayment error. (Tr. 17-18.)

overpayment was not waived because Seawood was at fault for the overpayment. (Tr. 121-22.) The ALJ held a hearing on December 12, 2007. (Tr. 20-37.) At the hearing, Seawood's attorney, Joy Thomas, represented that the only issue before the ALJ was the waiver issue. (Tr. 24.) Thomas further stated that Seawood recalled filling out a SSA form every year during the 1990s informing the SSA that she was receiving workers' compensation benefits. (Tr. 36.) Seawood also testified that she currently received $2,016.46 a month in worker's compensation benefits and that she was not currently receiving any social security disability benefits. (Tr. 25.) She further stated that when she first started receiving social security disability benefits in 1992, she only received approximately $62 a month because the amount of social security benefits was offset by the amount of her workers' compensation benefits.[6] (Tr. 26, 36.)

On March 13, 2008, the ALJ issued a decision finding that Seawood was without fault in causing the overpayment because she "notified SSA of her receipt of workers' compensation when she applied for benefits" and, thus, "did not make an incorrect statement that she knew or should have known was incorrect; she did not fail to furnish information that she knew or should have known to be material; and she did not accept a payment that she knew or could have been expected to know was incorrect." (Tr. 18; *see* Tr. 13-19.). The ALJ further found, however, that overpayment should not be waived because Seawood's monthly income exceeded her monthly expenses by $570.00 and Seawood should repay the overpayment at a rate that did not exceed $200.00 per month. (Tr. 18-19.)

---

[6] Apparently, the SSA claims that there never was an offset for Seawood's workers' compensation benefits even though Seawood had indicated on her initial application for benefits that she was receiving workers' compensation benefits. (Tr. 36.)

7

On May 5, 2008, Seawood requested review of the ALJ's decision. (Tr. 148-50.) Thereafter, on August 31, 2010, Seawood personally submitted two Statements of Claimant or Other Person ("Statements") to the SSA office located on Alta Mesa in Fort Worth. (Tr. 180-81.) In the Statements, she requested that her offset be reduced in her monthly benefit payments to compensate for the overpayment. (*Id.*) In a letter dated September 7, 2010, the Appeals Council notified Seawood that it was doing the following: (1) reviewing the ALJ's March 13, 2008 decision and (2) planning "to make a decision finding that [Seawood was] overpaid $21,264.50 in disability insurance benefits for the period May 1992 through July 2001, and that recovery of the overpayment cannot be waived because [Seawood was] not without fault in causing and/or accepting the overpayment." (Tr. 173; *see* Tr. 172-76.) Thereafter, on November 3, 2010, the Appeals Council issued its final decision, finding that: (1) the SSA overpaid Seawood $21,264.50 in disability insurance benefits for the period from May 1992 through July 2001; (2) Seawood was not without fault in causing or accepting the overpayment; and (3) recovery of the overpayment could not be waived. (Tr. 4-9.) In making its determination, the Appeals Council found Seawood's testimony that she had reported changes in her workers' compensation to SSA whenever they occurred "unsubstantiated because the evidentiary record does not contain proof that she reported any changes in her workers' compensation to SSA [until] after she became entitled to disability insurance benefits." (Tr. 8-9.)

## V. <u>DISCUSSION</u>

The SSA requires the Commissioner, when more or less than the correct amount of payment has been made under the disability insurance program, to make the proper adjustment or recovery. 42 U.S.C. § 404(a); 20 C.F.R. § 404.501. If more than the correct amount has been paid, the

8

Commissioner is directed to reduce future payments or obtain a refund from the beneficiary. 42 U.S.C. § 404(a). The Act prohibits, however, "adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purposes of [the Social Security Act] or would be against equity and good conscience." *Id.* § 404(b).

The Appeals Council refused Seawood's request for a waiver of repayment, finding that she was not without fault with regard to the overpayment. Seawood challenges this finding and asserts that she is not responsible for the overpayment because she reported on her initial application in 1993 that she was receiving or expected to receive workers' compensation benefits and "she filled out any forms required by her at onset up until present." (Pl.'s Br. at 1-2.) Seawood also asserts, in essence, that it was the SSA's fault that they did not catch the error earlier and that she should not now be penalized for the SSA's mistake. (Pl.'s Br. at 5-7.)

Fault, for purposes of recoupment of an overpayment of disability insurance benefits, applies only to the individual. *See Cress v. Barnhart*, 51 F. App'x. 483, 2002 WL 31319322, at *1 (5th Cir. Sept. 30, 2002). The fact that the Administration was at fault in making an overpayment does not relieve the overpaid individual from liability if such individual was also at fault. 20 C.F.R. § 404.507. In determining fault, the Administration will consider all relevant circumstances, including age, intelligence, and any physical, mental, educational or linguistic limitations of the individual *Id.* Fault will be found if the incorrect payment resulted from:

(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or

(b) Failure to furnish information which [the individual] knew or should have known to be material; or

9

> (c) . . . [A]cceptance of a payment which [the individual] knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507.

Waiver of recovery of an overpayment of social security benefits is granted only where an individual is "without fault" in causing the overpayment and where recovery of the overpayment would defeat the purpose of the Act or be against equity and good conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506(a); *Bray v. Brown*, 854 F.2d 685, 687 (5th Cir. 1998). The burden of proof that a claimant is without fault rests on the claimant. *Id.*

In Seawood's case, the Appeals Council, finding that Seawood was at fault for accepting the overpayments, stated:

> The claimant testified that she reported changes in her workers' compensation to SSA whenever they occurred. However, it appears that the claimant's testimony is unsubstantiated because the evidentiary record does not contain any proof that she reported any changes in her workers' compensation to SSA after she became entitled to disability insurance benefits. In addition, the claimant did not report these changes until SSA requested this information on May 29, 2001. Therefore, the Appeals Council affirms the Administrative Law Judge's finding with regard to the overpayment period and amount, but finds that recovery of the overpayment cannot be waived because the claimant was not without fault in causing and/or accepting the overpayment. Finally, the Appeals Council vacates the Administrative Law Judge's finding with regard to the rate of recovery of the overpayment because he did not have the authority to make that finding.

(Tr. 8-9.) After reviewing the Appeals Council's decision, it appears that the Appeals Council ultimately found that Seawood was not without fault because, at the very least, she failed to furnish information to the SSA that she knew or should have known was material. *See* 20 C.F.R. 404.507. The Appeals Council based its decision on the fact that, apart from Seawood's own testimony, there

10

was no credible evidence in the record that Seawood reported any changes in her workers' compensation benefits to the SSA until such information was requested in 2001.

Pursuant to 20 C.F.R. § 404.507, the Appeals Council was required to discuss Seawood's age, intelligence, and any physical, mental, educational or linguistic limitations in making its fault determination. *See* 42 U.S.C. § 404(b). The Appeals Council, however, wholly failed to discuss any of the above-listed factors and, thus, violated the regulation.

Violation of a regulation constitutes error and establishes a basis for reversal of the agency action and remand unless a reviewing court finds that the error is harmless. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *Frank*, 326 F.3d at 622. Remand would be necessary only if the claimant's substantial rights have been affected. *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) ("To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result.") (internal quotation marks omitted)); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

In this case, the ALJ's failure to discuss the factors listed in 20 C.F.R. 404.507 appears to be harmless as there is no evidence in the record that Seawood suffered from any age, intelligence, physical, mental, educational, or linguistic limitations that would have had an impact on her fault

11

determination. *Cf. Hughes v. Barnhart*, No. 03-174-A-1, 2004 WL 3247622, at *3 (M.D. La. May 27, 2004) (reversing and remanding the ALJ's decision regarding overpayment because, *inter alia*, the ALJ failed to mention or analyze the following relevant factors under 20 C.F.R. § 404.507: (1) the claimant's social security disability application was filled out by his sister; (2) the claimant had suffered from a stroke that resulted in at least a seven week hospitalization; and (3) the claimant had a ninth grade education, could not read or write, and had problems with dizziness and his right eye). Although the Court has sympathy for Seawood and is not certain that it would have come to the same decision as the Appeals Council, the Court may neither reweigh the evidence in the record nor substitute its judgment for that of the Commissioner's. *See Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383.

The Court finds that the administrative record contains substantial evidence supporting the ALJ's determination that Plaintiff was not without fault in accepting the overpayment, nor has that determination been shown to be the result of legal error. Consequently, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings,

conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **September 14, 2011** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 31, 2011.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv